IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PETER KIEWIT SONS', INC., | ) | |
| | ) | |
| Plaintiff, | ) | 8:10CV365 |
| | ) | |
| v. | ) | |
| | ) | |
| WALL STREET EQUITY GROUP, | ) | MEMORANDUM AND ORDER |
| INC., WALL STREET GROUP OF | ) | |
| COMPANIES, INC., SHEPHERD | ) | |
| FRIEDMAN, and STEVEN S. WEST, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the plaintiff's motion to compel (filing no. 104) and its motion for an order to issue a subpoena (filing no. 87), as well as defendants' motion to strike the affidavit of Tara Bethel, (filing no. 121). For the reasons set forth below, the motion to compel is granted in part and denied in part and the motion for an order to issue a subpoena is granted. The motion to strike the affidavit is denied.

FACTUAL BACKGROUND

Peter Kiewit Sons', Inc. ("Kiewit") has filed suit against Wall Street Equity Group, Inc. ("WSE"), Wall Street Group of Companies, Inc. ("WSG"), Shepherd Friedman, and Steven S. West (collectively the "Defendants"). The Defendants assist business owners in marketing their businesses to prospective buyers. One strategy the Defendants allegedly use is to suggest to some of their potential clients that Kiewit may be a potential buyer of the client's business. See Filing No. 46 -1, Ex. A.

Kiewit is a construction and mining company and is the owner of the service mark, "Kiewit" (the "Service Mark"). In 2008, Wall Street Equity Group, Inc. (or one of its affiliate companies) participated in some capacity in Kiewit's acquisition of a company known as Jet Industries.[1] Filing No. 117-11.

On two separate occasions third-party businesses contacted Kiewit and inquired as to Kiewit's interest in purchasing their respective businesses. Both of the third parties indicated they believed Kiewit was interested in their businesses because of correspondence they had each received from either the Wall Street Group of Companies, Inc. or Wall Street Equity Group, Inc.[2] Filing Nos. 106-1 & 106-2. After each occasion, Kiewit, either directly or through legal counsel, contacted Mr. Friedman and Mr. West advising them of the Service Mark and instructing them to discontinue the use of the Service Mark. Filing Nos. 117-6 & 117-10. The court granted a temporary restraining order and preliminary injunction in favor of Kiewit and enjoining the Defendants' continued use of the Kiewit Mark. Filing No. 17.

Discovery has commenced and the parties have reached an impasse over what information and documents Kiewit is entitled to discover. The disagreement has led to the

---

[1] The parties have provided relatively few details surrounding the Jet Industries transaction. However, it appears as if one of the defendant companies received a commission of $1,000,000 for its involvement in the sale to Kiewit. Filing No. 106-3 ¶ 9.

[2] Mr. Randy Sutton of Waterfront Marine Construction in Virginia Beach, VA received a letter dated June 25, 2008 and signed by Shepard Friedman as Senior Vice President of the Wall Street Group of Companies, Inc. Mike Hladky of Hladky Construction Corp. in Gillette, WY received a letter dated April 23, 2010 and signed by Steven West as Chairman and CEO of Wall Street Equity Group, Inc. Each letter purports to include "Background on the buyer, Kiewit." Filing Nos. 106-1 & 106-2.

motion to compel and motion for order to issue a subpoena now before the court.[3]  Oral argument was held on the motion to compel and other pending motions on October 12, 2011.

The requests at issue in the Motion to Compel are as follows:

**Interrogatories issued to defendants WSG and WSE:**

Interrogatory No. 8:   Identify the number of transactions that you have been involved with that have concluded in a sale in the past five (5) years.

Interrogatory No. 9:   Identify all documents reflecting payments made to you as a result of a sale of any business to Plaintiff.

Interrogatory No. 16:  Identify every record, accounting input, receipt or other document, including any electronically stored record or document, showing the number of appraisals sold, the fee charged for each appraisal and/or business valuation you have sold since 2008.

---

[3] The parties exchanged detailed correspondence at least once regarding the discovery dispute.  See Filing Nos. 106-6 & 106-7.  The parties apparently spoke on the telephone on September 22, 2011, although the parties do not agree on the exact nature of that conversation, and the Plaintiff sent a second letter to defendants' counsel. Filing No. 106-9.  That letter was not received until after the motion to compel was filed.  However, the court finds the initial correspondence was sufficient to meet the good faith conferral requirement of Fed. R. Civ. P. 26.

Interrogatory No. 17:   To the extent that such record, accounting input, receipt or other document, including any electronically stored record or document requested in interrogatory no. 16 is not in your possession, state the identity and location of the persons who know of this information.

Interrogatory No. 18:   Identify the number of appraisals and/or business valuations you have sold since 2008.

Interrogatory No. 19:   Identify the fee charges for each appraisal and/or business valuation identified in your answer to interrogatory no. 18.

Interrogatory No. 20:   Identify the fee collected for each appraisal and/or business valuation you identified in your answer to interrogatory no. 18.

Interrogatory No. 21:   Identify the number of deals which ended in a merger or acquisition since 2008.

Interrogatory No. 22:   For each of the deals identified in your answer to interrogatory no. 21, identify the fee charged as a commission for the merger/acquisition.

Interrogatory No. 23:   For each of the deals identified in your answer to interrogatory no. 21, identify the fee received for the merger/acquisition.

**Interrogatories to defendants Friedman and West:**

Interrogatory No. 3:   Identify all documents relating to or identifying "Peter Kiewit Sons', Inc." or "Kiewit," or any other variation of said terms not in your possession, custody or control, but of which you are aware and identify the person or entity with possession, custody or control of such documents.

Interrogatory No. 4:   Identify the number of transactions that you have been involved with at Wall Street Equity Group, Inc. or Wall Street Group of Companies, Inc. that have concluded in a sale in the past five (5) years.

Interrogatory No. 5:   Identify every entity of which you have been an officer and/or director in the past ten (10) years and identify the periods during which you held such positions.

Interrogatory No. 10:  Identify all lawsuits to which you have ever been a party and state the nature of the dispute in each lawsuit.

**Requests for Production to defendants WSG and WSE:**

Request for Production No. 5:   All documents, including flyers, brochures, letters or other marketing material that you or your agents use or have used to market your business.

Request for Production No. 9:   All documents reflecting payments made to you as a result of a sale of any business to Plaintiff.

Request for Production No. 11:  A copy of all advertisements which include "Kiewit" or any variation of said term, for advertisements you had any role in creating or disseminating in the past ten years.

Request for Production No. 13:  Produce all correspondence, advertisements, pamphlets, brochures, presentations, electronic presentations, samples, models, descriptions or other documents and materials that you have provided to construction or mining companies.

Request for Production No. 16:  Produce any and all tax returns filed by WSG and WSE for the period 2008-2011.

Request for Production No. 17:  All documents identified in your Answers to Plaintiff's Second Set of Interrogatories.

**Requests for Production to defendants Friedman and West:**

Request for Production No. 6:   A copy of all advertisements which include "Kiewit" or any variation of said term, for any advertisements you had any role in creating or disseminating in the past ten years.

Request for Production No. 10:   Produce any and all tax returns filed by Friedman and West for the period 2008-2011.

LEGAL ANALYSIS

A. **Motion to Compel.**

The scope of permissible discovery is extremely broad and parties may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense including the existence, description, nature, custody, condition, and location of any documents . . ." Fed. R. Civ. P. 26(b)(1). "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action". Gladfelter v. Wal-Mart Stores, Inc, 162 F.R.D. 589, 590 (D. Neb. 1995). However, the scope of discovery is not unlimited. Some threshold showing of relevance must be made before parties are required to produce a variety of information which does not "reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).

Once the requesting party meets the threshold relevance burden, "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing to bear that burden." Continental Ill. Nat'l Bank & Trust Co. Of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991). Further the party opposing the motion to compel must provide specific explanations or factual support as to how each request is improper. St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000).

"The fact that production of documents would be burdensome and expensive and would hamper a party's business operation is not a reason for refusing to order production of relevant documents." Wagner v. Dryvit Systems, Inc., 208 F.R.D. 606, 610 (D. Neb. 2001) (internal

7

citations omitted). The standard is whether the burden or expense is "undue" and whether the "hardship is unreasonable in the light of the benefits to be secured from the discovery." Id. (quoting Wright, Miller & Marcus, Federal Practice and Procedure § 2214, p. 435 (1994)). A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required. See Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 213 (D. Kan. 2002).

A review of the discovery requests and the corresponding objections in this case reveal the parties consistently disagree on two issues: (1) the relevance of the requested information; (2) the confidential nature of the requested information.[4]

    1. **Relevance**.

As discussed above, the relevancy requirement is not especially onerous in the context of discovery. In fact, the party requesting the discovery must simply make a showing that "any" possibility exists the requested information "may" be relevant to the subject matter of the litigation. See Gladfelter, 162 F.R.D. at 590. The defendants have objected to a number of the plaintiff's interrogatories and requests for production on the grounds that the requests are "not reasonably calculated to lead to admissible evidence" – that is, the information requested in not relevant.[5]

---

[4] Defendants also argue that many of the requests are meant solely to harass the defendants. The court finds no merit to that claim.

[5] Defendants argue that because the plaintiff has not been able to provide evidence of damages or other instances of the defendants' alleged use of the Service Mark beyond the two known letters. Filing No. 115, p. 20. As an initial matter, because of the nature of the claim and the type of damages available in infringement cases, the information regarding any damage the plaintiff has suffered will be solely in the hands of the defendant or third parties. For instance, in this case

Many of the plaintiff's requests focus on defendants' business operations including information about business valuations and appraisals and completed mergers and acquisitions. The plaintiff has submitted evidence of two instances where at least one of the defendants indicated Kiewit was a potential buyer of a business without Kiewit's prior knowledge. Filing Nos. 106-1 & 106-2. The plaintiff asserts it is entitled to additional discovery to determine if the defendants have used similar methods in other such instances. For their part, the defendants assert that the plaintiff is only entitled to documents or information about transactions in which the Service Mark was used. The defendants further assert no other such documents or transactions exist and, therefore, any other such records or information in their possession regarding their other business dealings are not relevant to the instant case.

For the majority of discovery requests, the court agrees with the plaintiff. As an initial matter, the defendants have provided mixed responses to the plaintiff's inquiries regarding the use of the Service Mark. For instance, the defendants have stated that they have invoked the Service Mark "on no more than five or six occasions," (filing no. 90-1, p.5), that the Service Mark has been used on only a "limited number of occasions," (filing no. 115-11), and that the defendants sent only the two letters, both of which Kiewit is already aware (filing no. 115-16, ¶¶ 27-31). While these statements are not necessarily inconsistent, they also do not foreclose the possibility that the defendants used the Service Mark on more than the two occasions already known by Kiewit. See filing nos. 106-1 & 106-2. Kiewit is not required to rely solely on the defendants' unsworn statement (or that of its attorney) that no other incidents of using the Kiewit mark exist.

---

Kiewit is only aware of the two instances of alleged infringement because the third parties brought the letters to its attention. Further, if defendants assert the plaintiff does not have a valid claim because it has no damages, that argument is best suited for a dispositive motion and not during arguments on a motion to compel.

9

Kiewit is entitled to seek information concerning the identity of the third parties who conducted business with, or received marketing from, the defendants during the relevant time period because: 1) there is affirmative evidence of record indicating the defendants used the Kiewit Service Mark extensively, and not just on the two occasions already uncovered by the plaintiff; and 2) based on the defendants' document retention practices and its discovery responses thus far, the defendants cannot serve as a reliable source of responsive discovery for this case.

### i) Affirmative evidence of extensive, but undisclosed use, of the Kiewit Service Mark.

The plaintiff has submitted evidence that the defendants used the Kiewit Service Mark on more than two occasions; specifically, the affidavit of Tara Bethel, a former employee of defendant Wall Street Equity Group, states that Bethel observed at least 100 instances of WSE employees representing to prospective clients that Kiewit was a potential buyer. Filing No. 119-1, ¶8. Although the defendants adamantly deny these assertions and have submitted evidence of their own to counter the allegations made by Ms. Bethel, (filing no. 121), the court cannot simply ignore the Bethel affidavit based on the assertion of the defendants (and their counsel) that Tara Bethel is a liar; especially when (as discussed below) other evidence of record indicates the defendants have not fully produced documents responsive to discovery requests (e.g., the Jett Industries documents). The defendants' motion to strike the Bethel affidavit, (filing no. 121), will be denied.

The face of Ms. Bethel's affidavit supports plaintiff's contention that documents regarding defendants' other business transactions, and the identity of the third parties involved in those transactions, may be relevant to determining the extent of defendants' unauthorized use of the Kiewit Service Mark to solicit business.

**ii)   Defendants' inability to serve as a reliable source of discovery.**

The corporate defendants claim that, consistent with their standard practice, they do not retain any correspondence unless it results in a completed sale. Thus, the defendants claim they would have no documents showing how often and to what entities they sent proposals (to include any proposals using the Kiewit mark for marketing). The record itself includes evidence of this practice; specifically, defendant West acknowledges that he submitted a proposed merger to the plaintiff concerning a company called Agra, (filing no. 115-16, ¶ 4), but the defendants have produced no documents regarding that proposal, presumably because it did not result in a "sale."

Since the defendants have a document retention practice of destroying all marketing records unless a closing occurs, to obtain a complete picture of the extent to which the Kiewit mark may have been used by the defendants, records identifying those who received the defendants' marketing must be obtained. As a result of the defendants' own document destruction practices, the only remaining sources for information regarding the content of defendants' marketing materials are the recipient third parties. Information regarding the identity of these third party business contacts, whether obtained by a third party subpoena or in response to written discovery served on the defendants, is relevant to determining the extent of defendants' use of the Kiewit service mark.

Counsel for the defendants argues that the defendants are not always required to maintain documents. The court agrees. There is nothing necessarily improper about a company's reasonable pre-litigation document retention policy whereby documents are disposed of in periodic intervals. Generally speaking, spoliation arguments are unsuccessful if relevant documents were destroyed in accordance with the business' reasonable document retention policy and/or practices. See, e.g., Lewy v. Remington Arms Co., Inc., 836 F.2d

1104, 1112 (8th Cir. 1988)(citing Grumbs v. International Harvester, Inc., 718 F.2d 88, 96 (3rd Cir. 1983) for the proposition that adverse inferences only arise when destruction of documents is intentional and done with fraudulent intent). However, even a reasonable practice of destroying documents may have unintended consequences. By failing to retain any documentation, a defendant may lose its ability to credibly defend claims asserted against it, and it may open avenues of third party discovery which would have been closed had the defendant retained documents consistent with standard business practices, and thereby been considered a reliable and complete source of the relevant discovery.

Even applying the defendants' practice of limited document retention, the record suggests the defendants have failed to fully produce responsive documents. The plaintiff has asked for the documentation of at least one transaction in which defendant West was involved that resulted in a sale – the purchase of Jett Industries by the plaintiff. Based on the defendants' explanation of its document retention practice, documents of this sale should exist. Yet the corporate defendants have responded that they do not have documents reflecting the $1,000,000 commission received for the sale in their possession or control.[6] Further, any transaction that resulted in a sale to Kiewit would likely have generated documents that contain the word "Kiewit," yet based on the evidence of record, no such documents have been identified by any of the defendants in response to plaintiff's requests for the identity of documents containing the word "Kiewit." Filing No. 106-3 & 106-7.

The corporate defendants' stated lack of any documents with the Kiewit Service Mark, including the documents for the sale of Jett Industries to Kiewit itself, draws into question

---

[6] The defendants argue that any such documents should already be in the possession of Kiewit. However, there is no reason why Kiewit would be in possession of the correspondence between Jett Industries and any of the defendants, particularly any of the documents discussing how Jett Industries would compensate the defendants for their part in the transaction.

exactly what documents the defendants keep as a normal part of their business practices. At the very least, the defendants' discovery responses thus far spotlight the uncertain (and perhaps non-existent) parameters of defendants' document retention policy or practice and the degree to which it is actually followed.

The defendants' third-party contacts may have information regarding the defendants' use of the Kiewit Mark in soliciting and transacting business, and based on the record, third-party records may be the only reliable source. Therefore, plaintiff's discovery requests aimed at identifying the defendants' contacts and client lists seek relevant information, and its motions to obtain this information by discovery request or subpoena will be granted.

Plaintiff also requests a variety of financial information in connection to the sale of defendants' services for business valuations and mergers and acquisitions. With the exception of the defendants' tax return information, the financial information sought, such as the defendants' accounts receivable and record of its various completed business transactions may provide evidence of damages, if any, the plaintiff has suffered. In addition, this information may help defendants identify defendants' clients which, as the court noted above, is relevant as well. Thus, the financial information, with the exception of corporate and individual tax returns, is relevant and should be produced.

### 2. **Confidentiality**.

The defendants also consistently claim the plaintiff's requests seeks confidential business information which is protected from discovery. The plaintiff counters that despite any private confidentiality agreements within the defendants' business documents, relevant business information is discoverable. See Grumman Aerospace Corp. V. Titanium Metals Corp. of Am., 91 F.R.D 84, 87-88 (E.D.N.Y. 1981).

The party claiming information or documents are confidential has the burden of proof on that issue. See Rayman v. American Charter Federal Saving & Loan Ass'n, 148 F.R.D 647, 651 (D. Neb. 1993); see, e.g., In re Remington Arms Co., Inc. 952 F.2d 1029, 1032 (8th Cir. 1991)(noting in the context of "trade secret[s] or other confidential research . . . or commercial information" the party opposing discovery has the burden of showing the information or documents qualifies as a protected category). The defendants have not met their burden on that particular issue. Simply claiming information, such as marketing materials and other documents exchanged with its clients, are confidential and proprietary without further substantiation does not meet the burden. Wagner, 208 F.R.D. at 612. And even if any of the information or documents sought are indeed confidential, the proper course of action is to enter into a protective agreement - as is standard practice in this district – not deny the requests altogether.[7]

### 3. Plaintiff's specific requests.

Based on the foregoing general principles, the plaintiff's motion to compel is granted as to the following: Interrogatories 8, 9, 16, 17, 18, 19, 20, 21, 22 and 23 served on defendants WSG and WS; Interrogatories 4, 5 and 10 served on defendants West and Friedman; and Requests for Production 5, 13, and 17 served on defendants WSG and WSE. However, to the extent any of the requests appear to require information or documents for

---

[7] The court strongly encourages the parties to discuss and propose a protective order that is acceptable to both parties. To that end, the court has previously sent, by email, a copy of a protective order used in another case involving the discovery of alleged confidential business information. In addition, if the defendants have documents that contain financial information from their third-party clients, the parties should discuss whether this information can and should be redacted to protect businesses that are not a party to this law suit.

an unlimited duration, the defendants are only required to produce documents or other materials developed after January 1, 2008.

The court further reminds the defendants that they must undertake a reasonable inquiry and make reasonable efforts to respond to the questions. For example, in response to Interrogatory No. 5 served on Friedman and West, which asks these individual defendants to identify every entity for which they have served as an officer and/or director and the time period of that service, these individual defendants have stated they "do not recall the entities or the dates when they were an officer and/or director." This response is insufficient and evasive. Particularly where corporate records are required to be filed with the state and retained by the corporation, the individual defendants need not rely solely on their personal memories to respond to the requests. There should be a number of other resources they can use to locate the information. If they were not involved in any other entities, they should reply accordingly. If they were, but after a diligent search, they remain unable to locate any information to answer the question, they should so state accordingly and under oath. "I do not remember" is not an appropriate answer to that particular question.

Request for Production No. 16, served on the corporate defendants, and No. 10, served on Friedman and West, seek their respective tax returns from 2008-11. The court does not see how this information is relevant. The plaintiff has not indicated how this information may lead to the discovery of additional potential misuses of the Service Mark or to potential proof of any damages the plaintiff has suffered. The motion to compel is denied with respect to those requests.

Despite objecting to a number of requests, and without waiving their objections, the defendants provided answers. These include Interrogatory No. 3, served on Friedman and West,  Requests for Production Nos. 9 and 11, served on the corporate defendants and

15

Requests for Production No. 6, served on Friedman and West. Plaintiff has provided no evidence that the answers are incomplete or dishonest. Accordingly, the motion to compel is denied as to these requests.

### B. Motion to Issue Subpoena

Under NECivR 45.1, no subpoenas for production or inspection of documents or other materials may be issued to a nonparty without first giving the adverse party notice of the contents of the proposed subpoena. Upon receipt of the notice, the opposing party has 7 days to serve written objections to the subpoena. The parties are to attempt to resolve the objections and any unresolved objections will be resolved by the court upon the filing of the appropriate motion. NECivR 45.1(b).

Plaintiff has requested the court enter on order commanding the service of a subpoena on Arthur Bertke, the landlord of the office building housing the offices of Wall Street Equity Group, Inc. The proposed subpoena contains the following requests:

> [C]opies of any and all computer electronically stored information, including but not limited to, all backup data and/or tapes regarding accounts receivable, money paid for business valuations, financial statements and any correspondence referencing Plaintiff or the word "Kiewit" for Wall Street Equity Group, Inc., Wall Street Group of Companies, Inc., Shepherd Friedman and/or Steven S. West for the time period January 1, 2008 to the present time.

Filing No. 73.

For the reasons set forth above, the requested information is relevant. Whether Mr. Bertke actually has access to the information and, if he does, what type of burden it will impose upon him are different questions. These objections may be appropriately raised by

16

Mr. Bertke once he is served with the subpoena. As for now, Plaintiff's motion for an order authorizing it to serve the subpoena is granted.

### C. Requests for Attorneys' Fees.

Plaintiff has requested the court to order the defendants to pay its costs and fees associated with the pending discovery motions. That request will be denied at this time, but without prejudice to reassertion if the current discovery logjam does not clear in the very near future, and the ongoing source of that problem is the defendants' resistance to the discovery process.

IT IS ORDERED:

1. Plaintiff's motion to compel (filing no. 104) is granted in part and denied in part as follows:

    a) Limited to the time period of January 1, 2008 to the present, the motion to compel is granted as to:

    - Interrogatories 8, 9, 16, 17, 18, 19, 20, 21, 22 and 23 to defendants WSG and WSE.

    - Interrogatories 4, 5 and 10 as to defendants West and Friedman.

    - Requests for Production 5, 13, and 17 as to defendants WSG and WSE.

    b) The motion is denied as to all other requests.

2. Plaintiff's motion for order to issue subpoena is granted, (filing no. 87). The plaintiff is authorized to issue the proposed subpoena to Arthur Bertke.

17

    3.        Plaintiff's requests for costs and attorneys' fees it incurred in filing its motion to compel and motion for order to issue subpoena are denied without prejudice to re-filing if defendant's discovery responses are not forthcoming or timely.

    4.        Defendants' motion to strike affidavit, (filing no. 121), is denied.

DATED this 25th day of October, 2011.

                BY THE COURT:

                *s/ Cheryl R. Zwart*
                United States Magistrate Judge

---

    *This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.