IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PETER KIEWIT SONS', INC., <br><br> Plaintiff, <br><br> vs. <br><br> WALL STREET EQUITY GROUP, INC., WALL STREET GROUP OF COMPANIES, INC., SHEPHERD FRIEDMAN, STEVEN S. WEST, <br><br> Defendants. | 8:10CV365 <br><br> MEMORANDUM AND ORDER |

This matter is before the court on Plaintiff's motion for sanctions and to disqualify attorney Margaret Hesford as counsel for Defendants Wall Street Equity Group, Inc., Wall Street Group of Companies, Inc, and Shepherd Friedman, (Filing No. 351)[1], and on Steven S. West's motion for additional time to locate counsel, (Filing No. 363).[2] For the reasons discussed below, West's motion for additional time will be denied: West now appears in this case pro se, but without prejudice to having counsel later enter an appearance on his behalf. To the extent Kiewit's motion seeks Hesford's disqualification as counsel for the non-West defendants, the motion will be granted; but to the extent it seeks an entry of default as a sanction, it will remain pending until West has been afforded an opportunity to respond in accordance with the schedule set forth in this order.

---

[1] Kiewit originally addressed Hesford's continued participation in this case in its initial response to Hesford's motion to withdraw. (Filing No. 321). After the court denied Hesford's original motion to withdraw, Hesford moved for the court to reconsider that order. (Filing No. 338). The court ordered a hearing on the matter. At that hearing Kiewit restated its position that Hesford should be disqualified from representing all of the defendants. (Filing No. 346, at audio file 9:30). At the court's direction, this matter was briefed by the parties. (Filing No. 351, 352, and 359). The matter has been fully briefed by both parties and oral argument has been heard. Accordingly, this matter is deemed fully submitted.

[2] The motion to reconsider my order denying Hesford's motion to withdraw as counsel for Steven West was rendered moot by the court's prior order, (Filing No. 356).

FACTUAL BACKGROUND

This case arises from Defendants' alleged unauthorized use of Plaintiff's service mark. Case progression has been derailed numerous times by discovery disagreements and Defendants' sanctionable conduct. The latest detour in this laborious march to trial occurred when entities related either directly or tangentially to this action filed bankruptcy proceedings in Florida, with at least one of those proceedings unearthing additional sanctionable conduct. Hesford has now withdrawn as counsel for defendant West, and the plaintiff argues that under various sections of the Nebraska and Florida Codes of Professional Conduct, she is also disqualified from representing any of the defendants. Finally, defendant West claims he cannot find an attorney able and willing to represent him.

The undersigned magistrate judge entered a sanctions award in favor of Kiewit in the amount of $82,909.60 for attorney fees Plaintiff incurred due to Defendants' sanctionable conduct. (Filing Nos. 263 & 306). The attorney fee award was to become part of the final judgment entered in the case, but on October 8, 2012, Plaintiff moved for reconsideration and sought to have the award of attorney fees made immediately payable due to the defendants' "continuous bad faith, dilatory, and obstructionist tactics . . ." (Filing No. 321, at CM/ECF p. 1). Based on the evidence presented by Kiewit, the court granted the Plaintiff's motion for reconsideration on November 5, 2012, and it ordered payment of the attorney fee award by November 26, 2012. The attorney fee award remains unpaid. (Filing No. 329).

While Plaintiff's motion for reconsideration was pending, "interested party" Wall Street Private Equity Group filed a Suggestion of Bankruptcy in this case.[3] (Filing No. 327). The Suggestion of Bankruptcy acknowledged that Wall Street Private Equity Group is a non-party to this action, but asserted "[u]pon information and belief, [Kiewit] may ask this Court

---

[3] On November 7, 2012, defendant Wall Street Equity Group, Inc. filed a Suggestion of Bankruptcy with this court and the case was subsequently stayed as to Wall Street Equity Group. (Filing No. 330). The bankruptcy proceeding involving Wall Street Equity Group was eventually dismissed and the case was no longer stayed as to any party. (Filing No. 348).

to impute liability to [Wall Street Private Equity Group], pursuant to a theory of successor liability." (Filing No. 327, at CM/ECF p. 1). Wall Street Private Equity Group listed the sanctions award as a liability in its bankruptcy case filed in the Southern District of Florida, West Palm Beach Division. See Case No. 12-35719-BKC-EPK, Filing No. 2. Because Wall Street Private Equity Group is not a party in this case, the presiding judge, Judge John M. Gerrard, promptly dismissed its Suggestion of Bankruptcy. (Filing No. 328).

Wall Street Private Equity Group's bankruptcy petition was filed by Richard Calabria on October 28, 2012. West moved to dismiss the petition, asserting that Calabria was not authorized to file for bankruptcy on behalf of Wall Street Private Equity Group. To address the motion to dismiss, the bankruptcy court needed to decide who actually owned Wall Street Private Equity Group. A hearing was held on November 14 and 26, 2012. Several witnesses testified – including West, Hesford, and Calabria. Of that testimony, the relevant discussions involved the circumstances under which stock in Wall Street Private Equity Group was issued and/or changed ownership.

Kiewit has alleged a claim for piercing the corporate veil and it seeks to recover not only the profits gained by the defendants' unauthorized use of the Kiewit mark, but the sanctions already awarded by the court. As described during the testimony at the Florida bankruptcy hearing, West and Calabria discussed the ownership of Wall Street Private Equity Group while in Omaha to attend hearings for this case; specifically, the sanctions hearings held on January 30 and March 8, 2012.

As relevant to the issue of piercing the corporate veil, Hesford testified that she was the attorney for the Wall Street companies operating out of the corporate defendants' physical location, 130 West McNab Road, Pompano Beach, Florida "and as other companies were incorporated . . . I represented all of them." (Filing No. 353-3, at CM/ECF p. 4). Hesford explained:

> I had spoken to Steven West a number of times about corporate formalities, and he always said, we don't do that. I said, well,

3

> that's my advice, you don't have to take it, but that's my advice. Mr. Calabria I provided that to, and he did comply with the corporate formalities for the first time, to my knowledge, with the companies.

(Filing No. 353-3, at CM/ECF p. 6). Hesford's testimony was corroborated by Calabria, the current named representative for the corporate defendants herein. Calabria confirmed that West did not follow corporate formalities with many of his corporations, including defendant Wall Street Equity Group.

Hesford also testified in the Florida bankruptcy proceedings regarding West's attempts to avoid collection of any judgments entered against him, including those in favor of Kiewit. Hesford stated:

> Mr. West had clearly said he didn't want any assets, he was judgment proof . . . . So he had made it very clear to me he didn't want any assets . . . including shares.

(Filing No. 353-3, at CM/ECF p. 7). Regarding West's conversation with Calabria the evening before the second sanctions hearing in Omaha, Hesford testified:

> Q. What was discussed on March 8, 2012 at this . . . dinner in Nebraska?
>
> A. What was discussed was that the share in all of the companies, Wall Street Private Equity, Wall Street Equity, and several other companies . . . that all shares should be issued to Mr. Calabria.

(Filing No. 353-3, at CM/ECF p. 18). Hesford testified that at various other times "West had clearly said he didn't want assets, he was judgment proof." (Filing No. 353-3, at CM/ECF p. 7). West denied making such statements.[4]

---

[4] Ultimately, Judge Kimball found Calabria's and Hesford's overall testimony to be credible and West's overall testimony to be not credible.

4

Hesford had originally moved to withdraw from representing West on October 3, 2012, (Filing No. 314), but that motion was denied on November 5, 2012. (Filing No. 329). After the hearings before the Florida bankruptcy court, Hesford asked the court to reconsider its denial of her motion to withdraw as West's counsel. (Filing No. 338). A telephonic hearing was held on the motion for reconsideration on January 2, 2013. (Filing No. 346). During that hearing, Kiewit argued that if Hesford was allowed to withdraw from representing West, she is also disqualified from representing any of the defendants in this action. Hesford disagreed. The court requested additional briefing and evidence on the issue of whether Hesford must be disqualified from representing not only West, but also the non-West defendants.

On January 17, 2013, West himself moved to have Hesford withdrawn as his counsel. (Filing No. 350). In support of the motion, he stated that he had filed a bar complaint against Hesford, explaining she "is my enemy and . . . will do everything and anything to hurt me." Id. The court granted West's motion to terminate his representation by Hesford on January 22, 2013, and set a deadline of February 6, 2013 for West to either advise the court that he would proceed as a pro se defendant or have an attorney appear on his behalf. (Filing No. 356). On February 5, 2013, West filed a pro se motion requesting additional time to locate counsel, explaining he is unable to find anyone who can or will represent him. (Filing No. 363).

On January 18, 2013, and based in large part on the testimony from the Florida bankruptcy proceedings, Plaintiff filed a second motion for sanctions and sought to have Hesford disqualified from serving as counsel for any of the defendants. (Filing No. 352). Hesford claims there is no conflict of interest or other ethical obligation requiring her to withdraw as counsel for the non-West defendants.[5]

---

[5] The plaintiff's pending motion seeks not only Hesford's withdrawal as counsel for the non-West defendants, but also seeks an entry of default against the defendants due to their continued sanctionable conduct. The court will delay ruling on that portion of Plaintiff's pending motion

ANALYSIS

Kiewit alleges Hesford cannot serve as counsel for the non-West defendants and should be disqualified.[6] "The decision to grant or deny a motion to disqualify an attorney rests in the discretion of the [district] court." Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1154 (8th Cir. 1999)(internal quotations omitted).

> "Because of the potential for abuse by opposing counsel, 'disqualification motions should be subjected to particularly strict scrutiny.' " Harker v. Commissioner, 82 F.3d 806, 808 (8th Cir.1996) (quoting Optyl Eyewear Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1050 (9th Cir.1985)). "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp., 690 F.Supp. 607, 613 (S.D.Ohio 1988) (citing Melamed v. ITT Cont'l Baking Co., 592 F.2d 290, 293 (6th Cir.1979)).

See Macheca Transport Co. v. Philadelphia Indem. Co., 463 F.3d 827, 833 (8th Cir. 2006).

Violations of ethical guidelines may provide a basis for disqualifying an attorney, but the Eighth Circuit has not adopted a bright line rule which requires disqualification in all cases where an ethics violation has occurred or will occur unless the attorney in question is disqualified. See Ark. v. Dean Foods Prods. Co., 605 F.2d 380, 383 (8th Cir. 1979)(overruled on other grounds, In re Multi-Piece Rim Prod. Liab. Litig., 612 F.2d 377 (8th Cir. 1980)). Although the moving party bears the initial burden of coming forward with

---

requesting entry of default until defendant West has been afforded an opportunity to respond in accordance with the deadline set forth in this order.

[6] Hesford argues the rules of professional conduct cited by Kiewit, and now this court, are meant to protect the client and cannot be raised as a basis for disqualifying opposing counsel. Undoubtedly a non-client party may raise issues of disqualification involving professional conduct. See, e.g. Olson v. Snap Products, Inc., 183 F.R.D. 539, 542 (D. Minn. 1998). Moreover, "a federal district court has the authority to supervise attorneys practicing before it. See United States v. Agosto, 675 F.2d 965, 969 (8th Cir. 1982), cert. denied, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982). In cases where the rules of professional ethics are implicated, the court may act on motion of an aggrieved party or may act sua sponte to disqualify an attorney. O'Connor v. Jones, 946 F.2d 1395, 1399 (8th Cir. 1999). Thus, it is entirely proper for the court to address whether Hesford should be disqualified from representing any defendant in this case.

evidence to justify disqualification, "[d]oubts should be resolved in favor of disqualification." Engineered Products Co. v. Donaldson Co., Inc, 290 F. Supp. 2d 974, 980 (N.D. Iowa 2003)(internal citation omitted).

This court prohibits attorneys from participating in "conduct unbecoming of a member of the bar." NEGenR 1.7(b)(2). The court has not adopted any specific ethical standards, but "in addition to any other material, the court may consult other codes of professional responsibility or ethics to determine whether a lawyer has engaged in conduct unbecoming a member of the bar." NEGenR 1.7(b)(2)(A).

> As explained in Neb. Ct. R. of Prof. Cond. § 3-501.9:
>
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> . . .
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Neb. Ct. R. of Prof. Cond. § 3-501.9.

Matters are "substantially related" "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in a subsequent matter." Neb. Ct. R. of Prof. Cond. § 3-501.9 ct. 3.

> [T]he determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought. The rule thus does not necessarily involve any inquiry into the imponderables involved in the degree of relationship between the two matters but instead involves a realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other.... [I]t is not appropriate for the court to inquire into whether actual confidences were disclosed.

Restatement (Third) of Law Governing Law. § 132 (2000) cmt (d)(iii) (reporter's notes) (quoting Westinghouse Elec. Corp. v. Gulf Oil Corp., 588 F.2d 221, 224 (7th Cir. 1978); accord Dean Foods Prod. Co., Inc., 605 F.2d 380, 383-384 (8th Cir. 1979).

Hesford represented all of the defendants from the inception of this lawsuit, but her professional relationship with West has obviously deteriorated. West refers to Hesford as his "enemy," and has filed a bar complaint against her. (Filing No. 350). Despite this court's concerns that firing counsel may be used by the defendants as yet another dilatory and delay tactic, after reading the evidence cited above (including Hesford's testimony at the bankruptcy proceedings), the court granted West's motion to terminate Hesford as his attorney on January 22, 2012. (Filing No. 356).

Now that Hesford's joint representation of all the defendants has ended, the court must decide if she can further represent Friedman, WSE, and WSG while her former client – West – remains a defendant. The answer hinges on whether West and the remaining defendants' interests are "materially adverse" in this case or in a "substantially related matter." Although it is permissible for one attorney to represent multiple defendants, once

the joint representation fails, the attorney must generally completely withdraw from the case. Neb. Ct. R. of Prof. Cond. § 3-501.7 cmt. 29.

      A..    <u>The Materially Adverse Interests of West and the Non-West Defendants</u>.

Broadly interpreted, the defendants' interests remain aligned. That is, they undoubtedly all wish to defeat the allegations listed in Kiewit's complaint regarding the alleged misuse of the Kiewit service mark. However, a closer examination of the complaint and the proceedings to date reveals several legitimate and substantial disagreements involving both actual and foreseeable conflicts between the defendants. Specifically as discussed in this memorandum and order, the readily apparent conflicts center on: 1) The corporate defendants' position and testimony which supports piercing the corporate veil as against defendant West; 2) The non-West defendants' interest in blaming West alone, and requiring him to pay, for the conduct leading to the sanctions already awarded in this case; and 3) The non-West defendants' interest in having West held personally accountable for and required to pay for any amounts which may ultimately be awarded by judgment on the merits in favor of Kiewit.

      1.    <u>Piercing the Corporate Veil</u>

Kiewit asserts the corporate defendants in this case are shams or alter egos of West and Friedman, and it alleges the corporate veil of Wall Street Equity Group should be pierced, leaving Friedman and West personally liable for any improper activities characterized as the actions of the corporation. (Filing No. 126, at CM/ECF p. 2). Clearly, a finding that the corporate veil should be pierced would not benefit West in any way.

Kiewit's case against West regarding piercing the corporate veil has been significantly bolstered by the Florida Bankruptcy proceeding testimony of Calabria and Hesford. Calabria testified as the corporate representative of the Wall Street Private Equity

9

Group[7]; Hesford testified as a fact witness based on information she learned while serving in her capacity as legal counsel for Wall Street Private Equity Group and as counsel for the defendants in the matter before this court. Both provided evidence that West refused to follow corporate formalities, and Calabria testified that West also misappropriated corporate funds for his personal use. The evidence proffered by the corporate defendants, by and through the testimony of Hesford and Calabria, increases the likelihood that the corporate veil will be pierced. Such evidence is contrary to the interests of both West and Shepherd Friedman – the other individual defendant in this case. That is, if Kiewit can pierce the corporate veil, both West and Friedman face the risk of being personally liable for any judgment in this case. And Friedman, having already testified that West handled all day-to-day operations of the corporate defendants, and now armed with evidence of West's alleged misappropriation of funds from those corporations, may claim West is solely liable for any judgment in favor of Kiewit. Thus, based on the positions and testimony of the corporate defendants, as voiced by Hesford and Calabria, West interests and the interests of Friedman and the corporate defendants are divergent and materially adverse. West's former attorney, Hesford cannot continue her representation of the non-West defendants. See Neb. Ct. R. of Prof. Cond. § 3-501.9(a).

2. The Pending Motion for Sanctions

Calabria and Hesford also testified that West was orchestrating a plan to transfer all his interests in the corporate defendants to Calabria (who is not personally named as a defendant in this case), with the goal of becoming unable to personally pay any award entered in favor of Kiewit. Kiewit asserts these alleged fraudulent transfers are sanctionable conduct and justify an entry of default against all the defendants. But the corporate defendants and Friedman are clearly attempting to distance themselves from West's actions.

---

[7] Calabria also testified as to information he received in his capacity as the corporate representative of Wall Street Equity Group (e.g., information he obtained from West while representing Wall Street Equity Group and the Wall Street Group of Companies as the corporate representative at the hearing on Kiewit's first motion for sanctions in this case).

10

In the brief opposing Kiewit's second motion for sanctions, Hesford, writing on behalf of only the corporate defendants and Friedman, notes: "critically, Judge Kimball's ruling is perfectly clear that he found no wrongdoing by Calabria . . . . The bankruptcy court's record speaks for itself as to Defendant West." Filing No. 357, at CM/ECP pp. 8-9.

The testimony of Hesford and Calabria played a prominent role in Judge Kimball's interpretation of West's conduct and his associated ruling. And the knowledge Hesford gained from West during her representation of all the defendants in this case is now being used against West alone. Corroborated by the testimony of Calabria, Hesford is essentially (if not specifically) arguing that if a default is warranted due to fraudulent transfers or otherwise fraudulently divested assets, that sanction should be imposed against only West, in his personal capacity, and not against Friedman or the corporate defendants.[8] Thus, Hesford possesses information gained in her previous representation of West that is being used against him by the non-West defendants on the pending motion for default. Due to the clear conflict of interest now existing between the defendants, and Hesford's knowledge obtained during the defendants' joint representation which is being used to the possible advantage of some but against another, Hesford is disqualified from representing any of the defendants. See Neb. Ct. R. of Prof. Cond. § 3-501.9.

  3.  <u>Joint and Several Liability</u>.

There are now two liability issues in this case: the presently existing and unpaid sanctions award in the amount of $82,909.60; and the potential judgment Kiewit may obtain—either as a default sanction or on the merits. Based on the testimony of Calabria and Hesford, it is highly foreseeable that Kiewit will prevail in proving the corporate defendants

---

[8] The bankruptcy proceeding addressed Wall Street Private Equity Group which was characterized as a successor corporation to Wall Street Equity Group. Moreover, testimony from Calabria indicates that West consistently and continually moved assets from one corporation to the next successor corporation. Filing No. 353-2 at CM/ECF pp. 28, 31, 34. Thus, how West handled the assets of the corporate defendants' in this case as well as the assets of the successor corporations are clearly at issue in this case.

are sham corporations. And if Kiewit succeeds in piercing the corporate veil and secures a judgment, the defendants, including Friedman and West, may be jointly and severally liable for that judgment—with each expecting the other to pay it.

With the sanctions award looming, the defendants are already racing to prove their respective inabilities to pay, (Filing No. 355), and will likely commence pointing toward each other (and primarily West) as the person truly responsible—perhaps on theories of indemnification or contribution. Under such circumstances, Hesford cannot represent the non-West defendants without asserting a position adverse to her former client West, and in violation of Neb. Ct. R. of Prof. Cond. § 3-501.9(a).

      B.     Informed Consent.

Perhaps recognizing the ethical problems and conflicts of interest that abound in this case, Hesford argues that West has essentially provided his informed consent to her continued representation of the remaining defendants. First, even if West had provided informed consent, that would not necessarily allow Hesford to continue her representation. But more importantly, the discussion of informed consent is largely moot because there is no evidence of record indicating West has provided written informed consent to Hesford's continued representation of the non-West defendants. West has stated that he no longer wants Hesford to represent him, but he has not waived the existing and imminent conflicts her continued involvement will create.

In short, Calabria and Hesford have provided testimony against West on issues which are currently, or anticipated as likely to be raised in this case. As to the issues of the alleged sham corporate structure, divestment of corporate assets, fraudulent transfers among defendants, culpability for sanctions, and ultimate payment of any awards in favor of Kiewit, the interests of West and the non-West defendants are now divergent. The knowledge Hesford obtained from West during joint representation can and has been used to harm

West's interests in this case. Hesford cannot ethically continue to represent any of the defendants.

CONCLUSION

The court acknowledges that Hesford's disqualification as counsel for the Wall Street corporate defendants and Friedman may impose a hardship on those defendants. But that hardship does not justify allowing Hesford to continue participating in this case in light the obvious conflicts of interest and the ethical obligations she still owes to her former client, West.

Accordingly,

IT IS ORDERED:

1) The Motion for Reconsideration filed by Ms. Hesford, (Filing No. 338), is denied as moot. Hesford has already been terminated as counsel of record for West. See (Filing No. 356).

2) To the extent Kiewit's motion, (Filing No. 351), seeks Hesford's disqualification as counsel for the non-West defendants, the motion is granted. Attorney Margaret Hesford is disqualified from representing any of the defendants in this case.

3) Hesford shall file a notice which advises the court that she has served a copy of this order on Defendants Friedman, Wall Street Equity Group, Inc., and Wall Street Group of Companies, Inc., states the date and method of service used, and provides the addresses, including email addresses, to be used in the future for providing notice of filings on Friedman and the West Corporations. The notice shall be filed on or before February 15, 2013.

4) To the extent Kiewit's motion, (Filing No. 351), seeks additional sanctions, including the entry of a default, the motion will be held in abeyance. Steven West has until February 27, 2013 to submit a response to Kiewit's motion for additional sanctions. The matter will be deemed fully submitted on February 28, 2013.

5) The clerk's office is instructed to mail Mr. West a copy of this order along with copies of Filing Nos. 351, 352, 353, 355, 357, 358 and 359. The records shall be mailed to:

> Steven S. West
> 1000 West McNab Road
> Pompano Beach, Florida 33060

6) On or before February 27, 2013, Defendant Shepherd Friedman shall either: (a) obtain the services of substitute counsel and have that attorney file an appearance on his behalf; or (b) file a statement notifying the court of his intent to litigate this case without counsel. Failure to comply with this order may result in an entry of default and/or a default judgment against defendant Friedman without further notice.

7) Wall Street Equity Group, Inc. and Wall Street Group of Companies, Inc., cannot litigate this action in this forum without representation by licensed counsel. Knoefler v. United Bank of Bismarck, 20 F.3d 347, 347-48 (8th Cir. 1994). On or before February 27, 2013, Wall Street Equity Group, Inc. and Wall Street Group of Companies, Inc., shall obtain the services of substitute counsel and have that attorney file an appearance on their behalf, in the absence of which the court will enter a default and/or a judgment of default against them without further notice.

8) Attorney Scott R. Austin has indicated to the court that he will seek to withdraw if attorney Hesford is disqualified. Austin shall either file his motion to withdraw or reaffirm his intention to remain as counsel of record in this case, on or before February 27, 2013.

9)      Defendant West's motion for additional time to locate counsel, (Filing No. 363), is denied.  West now appears in this case pro se, but without prejudice to having counsel later enter an appearance on his behalf.

February 13, 2013.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.